# STATE OF MICHIGAN

# COURT OF APPEALS

KAMAL NASSAR,

        Plaintiff-Appellant,

v

CITY OF DEARBORN,

        Defendant-Appellee.

UNPUBLISHED
April 20, 2017

No. 330653
Wayne Circuit Court
LC No. 14-010530-NO

Before: MURPHY, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Kamal Nassar, appeals as of right the trial court's order granting summary disposition in favor of defendant, City of Dearborn (the city), in this case pursued by plaintiff under the highway exception to governmental immunity, MCL 691.1402. Plaintiff alleged that he was operating a moped when he struck a large pothole, which caused the moped to flip over and crash, resulting in serious injuries to plaintiff. The city argued that plaintiff failed to serve the city with a proper notice of injury as required by MCL 691.1404(1). Particularly, the city contended that plaintiff's notice misidentified "the exact location . . . of the defect," MCL 691.1404(1). The trial court agreed and summarily dismissed plaintiff's lawsuit. We reverse and remand.

Following the alleged accident, plaintiff mailed a notice to the city, the city of Dearborn Heights, the city of Detroit, and the court of claims. The notice stated the following with respect to the incident and the claimed exact location of the defect:

> Please be further advised that on August 19, 2013, Mr. Nassar was driving his moped/motorcycle/motor scooter[] eastbound on Paul Street in the City of Dearborn, and/or Dearborn Heights, and/or City of Detroit. Mr. Nassar had crossed over the lanes for both southbound and northbound Southfield Freeway. Once he proceeded past the northbound lanes of the Southfield Freeway, he hit a large pothole in the lanes of Paul Street. Mr. Nassar observed the large pothole in the road bed of Paul Street, and immediately started braking, in order to bring his 50 cc moped to a stop. Unfortunately, Mr. Nassar was not able to stop his moped and the front wheel of his moped went into the large pothole on Paul Street. Mr. Nassar was thrown over the handlebars of his moped, and the moped flipped over on top of him.

-1-

The subject pothole is located in the eastbound lanes of Paul Street, approximately seventeen (17) feet east of the northbound lanes of the Southfield Freeway. The pothole is positioned on the right hand side of the left through lane for eastbound Paul Street. The specific pothole has the shape of a capital "I", and is depicted in the attached photographs with the red and white box of Marlboro cigarettes inside the pothole. The specific "I" shaped/hourglass shaped pothole is approximately 13 to 15 feet south of the double yellow line separating the eastbound and westbound lanes on Paul Street. Once again, the specific pothole is approximately seventeen (17) feet from the eastern edge of the northbound lanes of the Southfield Freeway, and approximately 13 to 15 feet south of the double yellow line which separates the eastbound and westbound lanes of Paul Street.[1]

On August 14, 2014, plaintiff filed a negligence lawsuit against the city, the cities of Dearborn Heights and Detroit, the Wayne County Department of Public Services, and Wayne County. All of the defendants filed answers and affirmative defenses. On October 29, 2014, a stipulated order was entered dismissing Wayne County and the Wayne County Department of Public Services without prejudice. On November 5, 2014, a stipulated order was entered dismissing the city of Dearborn Heights without prejudice. On March 6, 2015, the city of Detroit filed a motion for summary disposition, arguing that the location of the pothole was outside the jurisdiction of Detroit. On June 16, 2015, a stipulated order was entered dismissing the city of Detroit.

On September 16, 2015, the city filed its motion for summary disposition, contending that during plaintiff's deposition, he identified the site of the pothole as being east of the Southfield Service Drive instead of east of the Southfield Freeway, which was the location provided in the notice. Relying on an affidavit by the city engineer, the city additionally argued that the location identified in plaintiff's notice, which was on the Paul St. overpass, was outside of the city's jurisdiction and fell exclusively within the jurisdiction of the Michigan Department of Transportation (MDOT). The city engineer also averred as follows:

> I learned that Plaintiff claimed that the accident did not occur 17 feet east of the northbound lanes of the Southfield Freeway, but rather 17 feet east of the Southfield Service Drive. This is a different location than the location described in Plaintiff's notice. The Southfield Freeway, commonly known as M-39, is a state highway. By contrast, the Southfield Service Drive is an access road for the Southfield Freeway, and at Paul Street is a local road. The southern portion of the Southfield Service Drive in Dearborn has residential properties. Accordingly, if the accident occurred 17 feet east of the Southfield Service Drive, a local road,

---

[1] We note that the city submitted a police crash report which indicated that plaintiff had run into the rear of a stopped motor vehicle with his moped in the area of the pothole, with the motor vehicle then fleeing the scene. Plaintiff adamantly denied ever making such a claim, insisting that the accident and his injuries resulted from him hitting the pothole with his moped. This factual dispute is not relevant to resolving this appeal.

then Plaintiff's notice specifying that the accident occurred 17 feet east of the Southfield Freeway, a state highway, provided an inaccurate location of the accident.

Finally, the city maintained that the pothole did not constitute a defect under the highway exception to governmental immunity.[2]

In plaintiff's response to the city's motion for summary disposition, plaintiff stated:

The issue in this matter is really an issue of semantics. In drafting the Notice of Intent Letter in this matter, Plaintiff's counsel considered the "Southfield Freeway" to include not only the freeway lanes, but also the northbound and southbound service drive lanes which allow access onto and off of the Southfield Freeway itself.

Plaintiff, arguing that one of the attached photographs to the notice provided the necessary clarity, also maintained:

As the court will note, the "I" shaped pothole[] is clearly depicted in the photographs attached to Plaintiff's Notice . . . . More importantly, the very top edge of the first photograph[] shows a grassy border. This grass border would not be present on the Paul Street overpass for the northbound and southbound lanes of the Southfield Freeway, where [the city] []now claims Plaintiff identified the location of the subject pothole.

Plaintiff further argued that the pertinent pothole was located within the city's and not MDOT's jurisdiction and that the pothole constituted a severe highway defect.

On November 13, 2015, the trial court entertained oral argument on the city's motion for summary disposition, and it then ruled in favor of the city, reasoning as follows:

It's an inaccurate description, counsel. I don't think it's a technicality. I think it's an inaccurate description. It does not provide notice of the exact location, counsel. And while you did have the photographs, those photographs did not assist to identify the exact location.

\* \* \*

---

[2] The city also attached an affidavit by the office manager for the city's legal department, and she averred that the copy of the notice mailed to the city did not have any photographs attached to it despite the notice's indication to the contrary. In an affidavit by plaintiff's counsel's legal assistant, she averred that she had mailed the notice to the city by certified mail and personally attached the photographs. The city has not renewed any claim on appeal that it did not receive the photographs with the notice.

That grass is the most insignificant part of the photograph. It's barely there. It's barely there. Yes, when you pointed it out I could see it. [It is] a tough result but I do think that the statute says exact location.

On November 17, 2015, an order was entered granting summary disposition in favor of the city for the reasons stated on the record. Plaintiff now appeals as of right.

In *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012), this Court recited the applicable standards regarding a motion for summary disposition predicated on MCR 2.116(C)(7) and governmental immunity, stating:

> This Court reviews de novo a trial court's decision on a motion for summary disposition. The applicability of governmental immunity and the statutory exceptions to immunity are also reviewed de novo on appeal. MCR 2.116(C)(7) provides for summary disposition when a claim is "barred because of . . . immunity granted by law . . . ." The moving party may submit affidavits, depositions, admissions, or other documentary evidence in support of the motion if substantively admissible. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. We must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate. [Citations and internal quotation marks omitted; omissions in original.]

MCL 691.1404(1) provides:

> As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3) shall serve a notice on the governmental agency of the occurrence of the injury and the defect. *The notice shall specify the exact location* and nature *of the defect,* the injury sustained and the names of the witnesses known at the time by the claimant. [Emphasis added.[3]]

In *Thurman v City of Pontiac*, 295 Mich App 381, 384-385; 819 NW2d 90 (2012), this Court set forth the basic analytical framework for a case brought under the highway exception to governmental immunity:

> The immunity conferred upon governmental agencies is *broad,* and the statutory exceptions thereto are to be *narrowly* construed. Under the highway

---

[3] The only aspect of plaintiff's notice that the city challenged concerned the location of the alleged defect.

-4-

exception to governmental immunity, a governmental agency with jurisdiction over a particular highway has a duty to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. MCL 691.1402(1). . . . However, before the highway exception can apply, the plaintiff must timely notify the governmental defendant of his or her claim in accordance with MCL 691.1404(1). The notice provided under MCL 691.1404(1) need not be in any particular form, but must be provided within 120 days of the plaintiff's injury. [Citations, quotation marks, and alteration omitted.]

For purposes of MCL 691.1404(1), "[f]ailure to provide adequate notice under this statute is fatal to a plaintiff's claim against a government agency." *McLean v City of Dearborn*, 302 Mich App 68, 74; 836 NW2d 916 (2013) (citation omitted). In *Plunkett v Dep't of Transp*, 286 Mich App 168, 176-177; 779 NW2d 263 (2009), this Court acknowledged, reviewed, and applied caselaw interpreting MCL 691.1404(1), observing:

The Michigan Supreme Court has established that MCL 691.1404 is straightforward, clear, unambiguous, and not constitutionally suspect and must be enforced as written. However, when notice is required of an average citizen for the benefit of a governmental entity, it need only be understandable and sufficient to bring the important facts to the governmental entity's attention. Thus, a liberal construction of the notice requirements is favored to avoid penalizing an inexpert layman for some technical defect. The principal purposes to be served by requiring notice are simply (1) to provide the governmental agency with an opportunity to investigate the claim while it is still fresh and (2) to remedy the defect before other persons are injured.

The requirement should not receive so strict a construction as to make it difficult for the average citizen to draw a good notice. A notice should not be held ineffective when in *substantial compliance* with the law. A plaintiff's description of the nature of the defect may be deemed to substantially comply with the statute when coupled with the specific description of the location, time and nature of injuries. Some degree of ambiguity in an aspect of a particular notice may be remedied by the clarity of other aspects. [Citations, quotation marks, alterations, and ellipses omitted.]

" 'In determining the sufficiency of the notice . . . *the whole notice and all of the facts stated therein may be used and be considered* to determine whether it reasonably apprises the officer upon whom it is required to be served of the place and the cause of the alleged injury.' " *Plunkett*, 286 Mich App at 177 n 15 (citation omitted; emphasis added; omission in original).

In *Jakupovic v City of Hamtramck*, 489 Mich 939; 798 NW2d 12 (2011), our Supreme Court, in an order, addressed MCL 691.1404(1) in a case involving an inaccurate address:

The Court of Appeals recognized that the plaintiff had stated the wrong address[, mixing up neighboring properties,] in giving notice to the defendant of an alleged defect in a sidewalk. The Court of Appeals erred by excusing this error, rather than enforcing the notice requirement found at MCL 691.1404(1) as

written. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219 (2007). The statute requires notice of "the exact location" of the defect, and in this case, the plaintiff failed to specify the correct address where the defect was allegedly located.

In *Thurman*, 295 Mich App at 383, the plaintiff served a notice on the defendant indicating that the alleged defect was located at "35 Huron, Pontiac, Michigan." However, there was both a 35 West Huron St. and a 35 East Huron St. in Pontiac, and the notice had failed to distinguish between the two addresses. *Id.* The *Thurman* panel held that the notice was inadequate, entitling the defendant to summary dismissal of the suit. *Id.* at 386.[4] The Court rejected the plaintiff's reliance on photographs of the alleged defect, but only because they were first presented at summary disposition, which occurred more than 120 days after the injury; the photographs had not been attached to the notice. *Id.*

Here, we hold that plaintiff adequately identified the exact location of the defect when taking into consideration the whole notice, including the photographs. See *Plunkett*, 286 Mich App at 177 n 15. While perhaps confusion could arise for failing to distinguish between the Southfield Freeway and the Southfield Freeway Service Road, the remainder of the information in the notice and the photographs provided the necessary clarity. The section of the notice regarding the location of the pothole described the pothole as being in the shape of an hourglass or an "I" and lying "approximately 13 to 15 feet south of the double yellow line which separates the eastbound and westbound lanes of Paul Street." In addition, in the section of the notice regarding the nature of the defect, plaintiff wrote:

> The roadway in this area is severely cracked, crumbling, and pitted. The pothole itself is approximately six inches deep. The pothole is also approximately 12 inches wide and 18 inches long. The very bottom/south portion of the pothole[] extends to approximately 24 inches in width.

As the information above reflects, plaintiff provided a very detailed description of the pothole, which was uniquely shaped and extremely large, along with the surrounding area. When this information is coupled with the photographs of the area that were attached to the notice, the city should have realized that the 17-foot measurement in the notice ran from the Southfield Freeway Service Road and not the Southfield Freeway. This is especially true where, despite the trial court's comments, the grassy area in the one photograph was clearly visible, the photograph plainly depicted that the grass was level with Paul St., and where the photograph, given the location of the grass and the nature of other features, established the fact that the location of the pothole at issue was not on part of the Paul St. highway overpass, which is the area that the city claimed was identified in plaintiff's notice. We also struggle to believe that the city genuinely thought that plaintiff measured the 17-foot distance from the highway *running many feet under the roadway* on which the pothole existed, as opposed to the service road that is on the same plane as Paul St.

---

[4] The Court also relied, in part, on the fact that the notice did not state whether the defect was on the north or south side of Huron St. *Thurman*, 295 Mich App at 386.

In sum, we conclude that plaintiff, at a minimum, substantially complied with identifying the exact location of the alleged defect. Accordingly, the trial court erred in granting summary disposition in favor of the city. For the reasons discussed above, we also reject the city's argument that plaintiff's notice identified a location – a portion of the Paul St. overpass – that was not under the city's jurisdiction, but rather was the responsibility of MDOT. The city does not assert that the location of the pothole, as urged by plaintiff and measured from the service road, is not within the city's jurisdiction. Finally, we decline to address the city's alternative argument for affirming the trial court's order, i.e., that the pothole was not a defect as a matter of law. The trial court never reached said issue, and that is the appropriate court to address the argument in the first instance.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.


/s/ William B. Murphy
/s/ Michael J. Kelly